IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| KELVIN VALENTINE McDUFFIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 11-2838-JDT-dkv |
| | ) | |
| HENRY STEWARD, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET AND
PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

The *pro se* Plaintiff, Kelvin Valentine McDuffie a/k/a Kelvin Valentin McDuffie, a Tennessee Department of Correction ("TDOC") inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on September 26, 2011. (ECF No. 1.) The Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b). (ECF No. 5.) On August 30, 2012, the Court dismissed portions of the complaint and directed that process be issued for eleven individual Defendants. (ECF No. 20.) Seven of those Defendants,[1] former WTSP Warden Henry Steward; Correctional Officers Jennifer Binkley,

---

[1] The claims against Defendants Alford and McCain were dismissed without prejudice on November 6, 2013, for failure to serve process. (ECF No. 71.) Plaintiff has obtained entry of default against Defendants Terry and Springfield pursuant to Federal Rule of Civil Procedure 55(a). (ECF Nos. 70 & 84.)

Shawn Braden, and Steve Werkmeister;[2] Corporals Wayne England and Michael Harber; and Sergeant Barry Gruggett were served and responded to the complaint.

The Defendants subsequently moved for summary judgment on the grounds that Plaintiff had failed to exhaust his administrative remedies (ECF No. 41), but that motion was denied on September 10, 2013 (ECF No. 66). Presently before the Court is the Defendants' second motion for summary judgment. (ECF No. 80.) Plaintiff has filed a response to the Defendants' motion. (ECF No. 83.)

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or

---

[2] In the complaint, Plaintiff spelled this Defendant's last name as "Wertmister," but the correct spelling apparently is Werkmeister. (*See* ECF No. 80-4.) The Clerk is directed to MODIFY the docket accordingly.

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

      (B)      showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

      (1)      give an opportunity to properly support or address the fact;

      (2)      consider the fact undisputed for purposes of the motion;

      (3)      grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

      (4)      issue any other appropriate order.

Fed. R. Civ. P. 56(e).

> In *Celotex Corp.*, the Supreme Court explained that Rule 56:
>
> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986);

3

*see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

*Id.* at 252; *see also Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In support of the motion for summary judgment, Defendants have submitted the affidavits of Braden, Binkley, and Werkmeister (Braden Aff., ECF No. 80-2; Binkley Aff., ECF No. 80-3; Werkmeister Aff., ECF No. 80-4); the affidavits of Nicky Jordan and Thomas Shell, who were dismissed in the August 30, 2012, order of partial dismissal (Jordan Aff., ECF No. 80-5; Shell Aff., ECF No. 80-6); and Plaintiff's TDOC medical records (ECF Nos. 80-7, 80-8, & 80-9). In support of his response in opposition to Defendants' motion, Plaintiff

has submitted two declarations (ECF No. 83 & 83-2) along with various exhibits (ECF Nos. 83-4, 83-5, 83-6 & 83-7).

In the order of partial dismissal, the Court set forth Plaintiff's allegations:

> The complaint alleges that, on November 16, 2010, at 3:00 p.m., Defendants Terry and Binkley escorted Plaintiff to the shower. Plaintiff had completed his shower by 3:30 p.m., but Terry allegedly refused to call Binkley for assistance. Plaintiff and Terry exchanged words. At 4:00 p.m., after Plaintiff had remained in the small, hot shower for an hour, it was almost time for count. Terry called for backup but did not handcuff Plaintiff, which was standard procedure. After a time, Terry allegedly stormed out of the pod, claiming that Plaintiff was refusing to get out of the shower. ([ECF No.] 1 at 2.)[1] Binkley also stormed off, claiming that Plaintiff had assaulted her. (*Id.*)
>
> At approximately 4:15 p.m., Defendants Braden and [Werkmeister] came to get Plaintiff out of the shower. (*Id.*) Plaintiff was placed in restraints and led to his cell. (*Id.* at 2-3.) He knelt on his bed to get his leg restraints removed and, as he got up, Defendants Braden and [Werkmeister] allegedly assaulted him. Braden allegedly jumped on Plaintiff's right arm, which had been previously injured, in an attempt to break it. (*Id.* at 3.) After the assault had continued for some time, Defendant Harber allegedly came to the door, saw what was happening, and called for more officers to join in the attack. Defendant Springfield responded and allegedly joined the assault. During the attack, someone put the leg restraints back on Plaintiff. After some time, Defendant McCain ordered Braden, [Werkmeister], and Springfield to get off of Plaintiff. When McCain heard that Plaintiff had assaulted Binkley, he allegedly began to hit Plaintiff until a lieutenant, who is not a party to this action, told him to stop. (*Id.* at 3-4.)
>
> After about 30 minutes, Plaintiff was taken to see a nurse, and pictures were taken of his injuries. . . . (*Id.* at 4.)
>
> Later that day, Plaintiff noticed that the hardware inside his right arm was sticking out. Plaintiff notified Harber and Terry, but they refused to call a nurse. In response, Plaintiff refused to let the officers close his pie flap. Eventually, Captain Nimmo and Lieutenant Wilson, who are not parties to this action, arrived, and Plaintiff was allowed to see the nurse.
>
> . . . .

The complaint further alleges that, on April 6, 2011, Plaintiff was assaulted by Defendants [Werkmeister] and Alford. Plaintiff had previously notified Defendant Steward that those officers were threatening him, but Steward allegedly took no steps to protect Plaintiff. (*Id.* [at 5.]) According to Plaintiff, [Werkmeister] and Alford removed him from the rec cages and took him, in handcuffs and leg restraints, to his cell, where he was beaten for approximately ten minutes. After the beating, Plaintiff was standing near the door to his cell so his restraints could be removed. Plaintiff saw Defendants Gruggett and England escorting another prisoner, and notified them he had been assaulted and needed help. (*Id.* at 5-6.) Alford then allegedly struck Plaintiff in the mouth with his fist through the pie-flap of his cell door in front of these officers. (*Id.* at 6.)

In a third incident that occurred on July 12, 2011, Defendants Binkley and Terry allegedly conspired to violate Plaintiff's rights and to discriminate against him because of his race. At that time, inmates on Plaintiff's pod were scheduled for showers, and Terry threatened to record in her log book that Plaintiff had refused a shower. As a result, Plaintiff had to leave his cell without his Islamic headgear. (*Id.*) When Plaintiff left his cell, Terry allegedly commented about another Muslim inmate. Plaintiff asked Terry to stop, but "she goes on to disrespect Al-Islam — Muslims period." (*Id.* at 5-6.) The discussion apparently became heated, and Terry allegedly "aggressively tighten the cuffs around Plaintiff's wrist like as a torture device." (*Id.* at 6.)

After his shower, Plaintiff was escorted to his cell by Binkley and Terry. The officers did not remove Plaintiff's restraints, and one officer tried to push him down. Binkley called Defendant Alford, and Alford and Wertmister arrived in Plaintiff's cell and threatened him to drop his lawsuit. (*Id.* at 7.) [ ] Defendant Jarrett entered Plaintiff's cell, and Plaintiff asked for assistance. Jarrett allegedly left without taking action to protect Plaintiff from being harassed and threatened by the four officers. (*Id.*) Shortly thereafter, Jarrett returned with Defendants Harber and Boyd, who defused the situation. (*Id.* at 8.)

(ECF No. 20 at 4-7.)

Plaintiff's claims of excessive force and failure to protect[4] stem from the Eighth Amendment, which prohibits cruel and unusual punishment. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Brooks v. Celeste*, 39 F.3d 125, 127-28 (6th Cir. 1994); *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. The subjective component requires that the official act with the requisite intent, that is, that he have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 297, 302-03.

With regard to claims of excessive force by prison officials, "[t]he test for whether the use of force violates the Eighth Amendment requires a court to determine if the defendant's conduct caused the unnecessary and wanton infliction of pain." *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010) (internal quotation marks omitted). That question "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal quotation marks omitted); *see also Hudson*, 503 U.S. at 6-7. In *Hudson*, the Supreme Court held that a significant physical injury is not required to establish the objective component of an Eighth Amendment claim. 503 U.S. at 7-9. The

---

[4] "In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Clark v. Corr. Corp. of Am.*, 98 F. App'x 413, 415 (6th Cir. 2004).

7

Supreme Court recently reaffirmed *Hudson*'s holding, emphasizing that claims of excessive force do not require any particular quantum of injury. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

The Court first notes that there is no evidence that Defendant Binkley witnessed or participated in the alleged assault on Plaintiff that occurred on November 16, 2010. In her affidavit, Binkley states that Plaintiff was in the shower on that date and was refusing to come out. He kicked the pie flap in the door, causing her hand to get caught in the flap. Because she was injured, she reported the incident and went to the WTSP infirmary. Binkley was advised by a nurse to seek outside medical treatment, and she left the prison at that time in order to do so. (ECF No. 80-3 at 1-2, ¶¶ 3-8.) Although Plaintiff does allege that Binkley was at least somewhat involved in an incident that occurred on June 12, 2011, Plaintiff does not contend that he suffered any injuries from that incident. Therefore, Defendant Binkley is entitled to judgment as a matter of law.

In addition, Plaintiff has offered no evidence that he suffered any more than *de minimis* injury as a result of the alleged assault on April 6, 2011. He alleges that he was beaten without provocation by Defendants Werkmeister and Alford for more than ten minutes and suffered injuries to his leg, neck, and left ear. However, when he was examined by the nurse shortly after the incident, she noted that Plaintiff had only old bruises and slight

redness to his neck and upper chest. There were no cuts and no bleeding, and the nurse noted that no treatment was given because Plaintiff had no injuries. (ECF No. 80-8 at 73.) Thus, there is no evidence that Plaintiff was subjected to excessive force during this incident.

Plaintiff also alleges that Defendants England and Gruggett witnessed Alford strike him in the face through the pie flap after the initial assault on April 6, 2011, but did nothing to help him. However, as there is no evidence that Plaintiff's injuries were other than *de minimis*, his claims against England and Gruggett for failure to protect must also fail.

With regard to Defendant Steward, Plaintiff alleges that he had complained to the Warden, through letters and grievances written before the April 6th incident, that he was being threatened but that he never heard anything back from Steward. However, there is no evidence that Steward had the level of personal involvement that would raise this claim above the level of *respondeat superior*. In fact, Steward was provided with a copy of the Investigative Report prepared by TDOC Institutional Investigator, Lt. Thomas E. Shell, in which Shell concluded that Plaintiff's allegations regarding the earlier November 2010 assault were false. (ECF No. 80-6 at 3-28.) Therefore, Steward cannot be said to have encouraged or to have "implicitly authorized, approved or knowingly acquiesced" in the alleged misconduct. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

With regard to the alleged assault that occurred on April 6, 2011, the Court finds no genuine issues of material fact for trial. Therefore, Defendants Werkmeister, England, Gruggett, and Steward are entitled to judgment as a matter of law on that claim.

9

As to the alleged assault that occurred on November 16, 2010, however, the Court concludes that there are genuine issues of material fact for trial. Defendants Braden and Werkmeister assert in their affidavits that there simply was no assault on November 16, 2010. They assert that, as they were escorting him back to his cell after the incident in which Defendant Binkley was injured when her hand was caught in the shower door, Plaintiff became belligerent. (ECF No. 80-2 at 2, ¶ 5.) When they reached his cell, Plaintiff was instructed to kneel on his bunk, which he initially did. However, he refused to remain in that position and got up several times, cursing and threatening Braden. (*Id.*; ECF No. 80-4 at 1-2, ¶ 3.) Braden then asserts that Plaintiff "was placed on his bed with physical contact, but in no way what I would consider 'force'." (ECF No. 80-2 at 2, ¶ 5.) Werkmeister states that "only the minimum amount of force was used to gain control" of Plaintiff. (ECF No. 80-4 at 2, ¶ 3.) Plaintiff's leg irons were then removed, and when the officers left the cell, his wrist restraints were removed through the pie flap. (ECF No. 80-2 at 2, ¶ 6.) Both Braden and Werkmeister state they did not assault Plaintiff and did not observe that he had any injury. (*Id.* ¶¶ 8-9; ECF No. 80-4 at 2, ¶¶ 5-6.)

The findings in Lt. Shell's Investigative Report support the Defendants' version of this incident.[5] A separate investigation into Plaintiff's several complaints of mistreatment was made by Nicky Jordan, a TDOC Special Agent with the Office of Investigations and

---

[5] Shell states in his affidavit that he reviewed the November 16, 2010, security footage from inside Plaintiff's pod. (ECF NO. 80-6 at 2, ¶ 4.) His report indicates that the videotape does not support Plaintiff's allegations about the incident. (*Id.* at 3.) However, Shell does not describe what the footage showed, and it has not been provided to the Court.

Compliance. Jordan interviewed Plaintiff and TDOC employees; he concluded that Plaintiff's allegations were not credible and that there was no evidence of mistreatment. (ECF No. 80-5 at 3-4.)

Defendants' version of this November 16, 2010, incident is flatly contradicted by Plaintiff in his declaration. (ECF No. 83.) Plaintiff states that was brutally assaulted by Braden and Werkmeister even though he was not belligerent or resisting. He states that he was handcuffed on the bed, and that Werkmeister held him while Braden hit him repeatedly and pulled and jerked his arms. Plaintiff told Braden to stop, that he had a metal plate and screws in his arm and that Braden was going to break it. Braden then jumped on Plaintiff's arm, and Plaintiff felt like his arm "exploded." (ECF No. 83 at 2.) Defendant Harber came to the cell door but did not call a code, instead he called Defendant Springfield, who also entered the cell. Plaintiff states, "[t]hey now got me like a wheelbarrow, stretching me out, having they [sic] way with me as Cpl. M. Harber stand at the door and watch." (*Id.* at 3.) Defendant McCain also entered the cell and began to stop the assault. However, when Braden told him that Plaintiff had hit Defendant Binkley, McCain also started hitting Plaintiff until Lt. Wilson, who is not a party, ordered him to stop. (*Id.*)

Defendants again assert that Plaintiff has failed to offer evidence that his injuries from this November 2010 incident were more than *de minimis*. His medical records show that when Plaintiff was initially taken to medical triage after the incident, a nurse noted that he had superficial scratches to both wrists, no active bleeding, no redness or swelling, and was in no respiratory distress. (ECF No. 80-8 at 82.) A few hours later, the nurse was called

back to the unit because Plaintiff was complaining that a screw had come out of the metal plate in his arm. She noted a small bump in Plaintiff's right bicep, but the skin was intact and there was no bleeding.[6] Plaintiff was referred to a doctor to rule out a foreign body in his arm, and was sent for an x-ray on November 23, 2010. The x-ray showed "chronic posttraumatic/postsurgical changes" with "radiopaque debris in the medial aspect of the arm," but "no acute osseous or hardware abnormality." (ECF No. 80-7 at 35.)

Plaintiff was still complaining about his arm several months later, in August 2011. He reported severe pain when the bump on his right arm was touched that his arm became numb, tingled, throbbed, swelled. On examination, he was unable to fully perform a finger to thumb tap. (ECF No. 80-8 at 65.) This evidence suggests that the injury Plaintiff sustained on Novembere 16, 2010, may have been enough to exacerbate a previous condition, raising it above the level of *de minimis*.

While the evidence regarding Plaintiff's injury is not strong, the Court finds that it is sufficient to withstand summary judgment, since "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. at 38. Therefore, Defendants Braden and Werkmeister are not entitled to summary judgment on the claims involving the alleged assault that occurred on November 16, 2010.

For the foregoing reasons, the motion for summary judgment is GRANTED as to Defendants Steward, Binkley, England, and Gruggett, and the Clerk is directed to terminate

---

[6] While the nurse noted "possibly self inflicted by I/M" on the chart, there is no evidence in the record to support that assertion.

them as parties to this action. Summary judgment is also GRANTED to all the Defendants on Plaintiff's claims stemming from the April 6, 2011, and June 12, 2011, incidents. However, the motion for summary judgment is DENIED as to Defendants Braden, Werkmeister, and Harber on the excessive force and failure to protect claims arising from the November 16, 2010, incident.

IT IS SO ORDERED.

                                            s/ **James D. Todd**
                                            JAMES D. TODD
                                            UNITED STATES DISTRICT JUDGE